## ED. DAVIS *v.* THE STATE.

1. CHARGE OF THE COURT.— If, after having charged the general principles of law and the statutory definitions of the offense, the court makes a direct application of the law to the evidence in the case, the charge is not amenable to the objection that it states merely abstract propositions of law.

2. SAME.— The charge of the court must give to the jury instructions applicable to every legitimate conclusion which can be deduced from the evidence, and if there be conflicting theories of the State and defendant, supported by any evidence, they must be presented clearly and pertinently by the charge. See the opinion for a charge *held* correct and sufficient under the evidence in this case.

3. SAME — NEW TRIAL.— If of the two theories presented by the evidence and submitted by the charge, the evidence tends to support that of the State, but fails to establish it with reasonable certainty, and the court refuses thereupon to grant a new trial, the error is not in the charge but in the ruling on the motion for new trial.

APPEAL from the District Court of Milam. Tried below before the Hon. SPENCER FORD.

The indictment charged the appellant with an assault with intent to kill and murder one Julius Johnson, in Milam county, April 9, 1880. A verdict of guilty was returned against him by the jury, and his punishment was fixed at two years in the penitentiary.

The evidence in chief for the State established substantially that the prosecuting witness, Johnson, was at work in a field rented by him in Milam county, on the day alleged in the indictment, when the defendant, armed with a gun, and accompanied by one Luther Parker, came to the field. The appellant asked Johnson why he was keeping or harboring his dog? to which Johnson replied that he was not so doing. Appellant then said that Johnson's wife was feeding the dog, and keeping him at their house. The witness Johnson denied this charge, and told appellant if he wanted his dog to go and get him; that if he, witness, had a dog that would not stay at home he

would kill him and make him stay there. Appellant then said "God d—n you," and started towards witness, threatening to slap his jaws. The witness then told appellant that if he thought he could slap his jaws, to try it. Appellant then said to witness that if he meant business to say so, and witness turned, ran to his house, got his gun and returned. As he approached, appellant fired, the shot taking effect in the side of witness' neck. Appellant then broke his gun over witness' head; whereupon witness shot appellant in the leg, and he, appellant, started to run. On cross-examination this witness, Johnson, stated that he cut appellant with a knife after he had shot him in the leg. Re-examined, he testified that he made no attempt to shoot appellant until after he was shot himself, and that he went to the house to get his gun for self-defense.

The material difference between the testimony of the witness Johnson for the State, and that of Luke Parker and Catherine White (who were near by when the altercation commenced and saw it all) for the defense, is that the two last named witnesses make Johnson the aggressor except in the verbal dispute about the dog. Their testimony is very similar, and to the effect that, after appellant spoke of slapping Johnson's face, Johnson said that he "would walk through appellant if he (appellant) were only large enough." Appellant then said to Johnson that if he, Johnson, "meant business to say so;" whereupon Johnson turned and went to his house, some 200 or 300 yards distant. During this absence, the witness Parker, according to this evidence, importuned appellant to run and get away from the place. Appellant stayed until Johnson was seen returning with a gun and pistol, and then started to run. Johnson, running also, overtook appellant some 200 or 300 yards from where the latter started, and as he approached presented his pistol towards appellant and snapped it at him two or three times, when

appellant turned and fired upon Johnson and then struck him over the head with his gun and fled again, but was shot down by Johnson, and stabbed in the arm and back. The witnesses, Parker and Catherine White, claimed also that on the examining trial they stated that, when Johnson started back with his gun and pistol, appellant started to run, but was pursued and overtaken by Johnson. They testified positively that they gave such evidence before the examining trial, but this part of their evidence was contradicted by witnesses for the State in rebuttal. The magistrate before whom the examining trial was had testified to the contrary, and the written evidence of these witnesses, taken down on that occasion, was introduced by the State, and failed to sustain their testimony in that respect.

*Hamman & Adams*, for the appellant.

*Horace Chilton*, Assistant Attorney General, for the State.

HURT, J.   The appellant was indicted for an assault with intent to murder one Julius Johnson.   At the fall term, 1880, the cause came on for trial, resulting in a verdict and judgment of conviction, and penalty assessed at two years' confinement in the penitentiary.   Motion for a new trial was overruled, and defendant appeals to this court.   In his charge the judge defined murder, malice, and assault and battery, and as a test of the character of the assault, gave this in charge to the jury: "Whenever an assault is committed under such circumstances that, had death resulted therefrom, the offense would have been murder, such an assault is an assault with intent to murder."   The counsel for defense does not object to these charges upon the ground that the definitions are incorrect, nor that an erroneous principle is enunciated, but solely for the reason that they state abstract proposi-

tions of law, general in their nature, and calculated to confuse and mislead the jury to the prejudice of the defendant, — citing in support of this objection, *Miles* v. *The State*, 1 Texas Ct. App. 510, and *Francis* v. *The State*, 7 Texas Ct. App. 515.

By an examination of these cases, and other authorities on this subject, it will be found that the error does not consist in the enunciation of general principles of law defining the offense charged, but in the failure to make a direct and pertinent application of the law to the case as made by the facts. If the charge dealt in general principles of law and statutory definitions alone, the objection would be well taken; but after having given these principles and definitions, the judge made a direct application of the law to the evidence in the case. To the following portion of the charge, thus applying the law to the facts, the counsel for defendant objects: "If the defendant went to the field of Johnson with the intent to shoot and kill Johnson, and did shoot him with intent to kill him, he is guilty of an assault to murder." "Or, if he went where Johnson was and they then got into a quarrel, and both Johnson and defendant formed an intent each to take the life of the other, and with this intent defendant willingly entered into the fight and shot Johnson, he is guilty of an assault with intent to murder."

The objection urged is not to the principle contained in the charge, but that there is no evidence to support it. The rule is this: "It is the duty of the judge presiding to give instructions applicable to every legitimate conclusion which can be made from the evidence." The theory of the State and that of defendant, if supported by any evidence, should be presented in a charge by which these theories are clearly and pertinently made prominent to the jury. If there be evidence tending to establish these theories, it is the duty of the judge to charge thereon;

and if the jury should convict, the error would not be in the charge. But suppose the evidence tends to support the theory of the State, but fails to establish it with reasonable certainty, the error would not be in the charge, but in the ruling of the court upon the motion for a new trial. The legal principles set forth in this charge are not questioned; the objection being a want of a predicate in the facts upon which to base the charge. We are of the opinion that the evidence lays a foundation for, and clearly indicates the necessity of, such a charge. We are also of the opinion that the evidence not only tends to support the theory of the State, but establishes it with reasonable certainty, to that degree of satisfaction which clearly justified the court below in overruling the motion for a new trial.

For the same reason the counsel for defendant objected to this charge: "If the defendant provoked the difficulty with Johnson, with the intent to kill him, and retreated, not for the purpose of withdrawing from the fight, but with a view of drawing on Johnson and then to shoot him, and if he did shoot Johnson with intent to kill him, he is, in that case, guilty of an assault to murder."

To this we apply the observations made in regard to the first. It will be seen that these charges apply to the theory of the State; by reference to the whole charge, it will be found that the judge gave clear and pertinent charges to every phase and theory of the defense, presenting the vital issues clearly to the jury. The charge being a proper application of the law to the facts, the jury having passed upon these, we cannot say that the verdict is not sustained by the evidence; the judgment must, therefore, be affirmed.

*Affirmed.*